Good morning, everyone. The first argued case this morning, Assembly 1550-34, Romanoff Equities v. United States. Mr. Hearn. Thank you, Judge Newman, and may it please the Court. This appeal asks this Court whether the Court of Federal Claims was correct to hold that a 1932 easement that was granted for the purpose of creating and operating an elevated railroad viaduct was, in fact, which was used for 50 years for only that purpose. Well, let me ask you exactly what's troubling here. There's no question that that was why the easement must have been an issue. But the contract that was entered into is extraordinarily broad and unlimited. Isn't this more a matter of contract interpretation than easement philosophy? Well, I think two points in answer to that, Judge Newman. The first is what New York's highest court has said is a timeless first principle, is that the intent of the grantors is what defines the scope of the easement. In this case, as even Judge Firestone found, the parties never foresaw the use of this property for anything other than a railroad. They didn't foresee it particularly for taco trucks and dancing and public recreation. That was not something contemplated. But the New York Court of Appeals has expressed its view and opinion, including Chief Judge Cardozo. What could be better than that? And they had a precedent in a similar case going with a broader interpretation based on the language, which is similar to our language, right? Well, I don't think it's similar, and I think the case you're referring to is missionary society, an opinion by Judge O'Brien joined by Justice Cardozo. Justice Pound didn't participate in that, but certainly some luminous jurors involved in that. But that case, if you read the case, is a short opinion. That involved an easement to access Long Island Sound, and the question there was whether an easement granted for horses and vehicles could also be used by pedestrians and could they build a sidewalk. And in that case, the court specifically notes that the intent of the grantors, they're talking about this was an easement, that these were uses that were within the scope of the intent of the grantors. And the source of the determination of the intent of the grantors, as I understand New York law and law generally is, starts with language, right? If there's something about the context that strongly suggests that the language should not be read as broadly as it would appear on the face of it, that's something worth considering. But you start with the language and frequently, I would suppose, stop with the language. So that brings us back to Judge Newman's question. Isn't this very broad language indicative of an intention to grant in accordance with the ordinary understanding of that language? And certainly on that point, we prevail, and he'll explain why. This language, it says, such other purposes as a railroad may desire. That's the language Judge Firestone fixed upon to say this is such argument. That's such argument. But before we get to that, and I don't want to cut you off from making that argument because I know it's a central issue in your brief. But before you get there, I'd like to make sure I understand what your position is with respect to whether this kind of conveyance could, even if quite clearly intended, to grant the right for any purpose whatsoever, would be unenforceable in New York law. And suppose that instead of saying such purposes as that the language had been unambiguously explicit and said for any purpose whatsoever, whether railroad purpose or otherwise, that the successors and the signs, whoever they may be, might wish. Is it your position that that clause would be unenforceable in New York law? Well, yes, Judge Bryson, because it's not an easement, right? I mean, if you say it could be easement. Isn't that another way of saying that it might not be an easement, but whatever kind of instrument it is, whatever's at the top, you look at the text of the instrument and if it makes that conveyance, and that conveyance is the intent of the parties, wouldn't that conveyance be respected, whether you call it an easement or a fee or a fee with a reverter or whatever? Wouldn't that be respected at New York law? Or put another way, do you have any case that says it wouldn't? Well, I think there's several cases, and we cite them in the brief. I think the Young case is one that's particularly leading that New York's highest court has said we must look at the language of this document to determine the intent of the parties. The intent governs. We've agreed on that. But I'm looking for something, some support, which I didn't really find in your brief, for the proposition that no matter how clear, even assuming away the such problem, no matter how clear the language might be, it's unenforceable. Well, again, that begs the conclusion that this deed and the language in the deed would have actually said you can use this land for anything. Well, it's a starting point for trying to decide whether the inquiry into what the language actually means is worth engaging in. I mean, if you can't have anything, any kind of conveyance like this, no matter how clear the language is, we're done. Well, I would say no court, I would agree exactly with that premise, that no court in New York, and particularly New York's highest court, has never found ever that an easement granted the right to use property for any purpose, essentially converting what is an easement into a fee estate. No court has ever found that to be the case. But no court has ever held that it isn't enforceable, as I gather. Well, I mean, the courts have said repeatedly in New York that we're going to look at the language and the intent of the parties. That's our, quote, timeless first principle. Right, but you're going back to the language and intent and not pointing me to a case that says you can't have this kind of agreement even if the language is clear. Well, I would look at the Lewis v. Young decision, which was in 1998. I would look at also Entente v. Lakeshore Railroad, which was an 1877 decision, and they're cited in a brief, both by the New York Court of Appeals. Both of those say when we're confronted with a situation such as this, we have this document, which in this case, it's not just six words. We're dealing with a 10-page, 3,000-word, single-spaced, typewritten document that the parties took great pains to specifically identify all their rights and responsibilities and to conclude that that text somehow said, oh, forget everything in this document. We're giving you the right to use this property for anything you want to use, even things that, as Judge Firestone found, they never contemplated, is contrary to, as again the Court of Appeals in New York has said, timeless first principle that we're going to look at the party's intent. We'll look at the language and the text of the document. So that gets us to that. Well, the problem with that argument is if you look at the language and the text of the document, it's extraordinarily strong. We see so many of these documents because of the Rails to Trails Act, and I don't recall any that was written this broadly. They generally say railroad purposes. Well, this does. Or related purposes. In the document, related purposes. Then comes the act of Congress of the conversion to recreational use, in part in order to preserve the space in case we ever go back to railroads. But I've never seen one written this broadly, and one wonders. Back in history, obviously none of us was there, what was in the minds of the negotiators to write something? We assume competent lawyers on both sides to write an unlimited grant. It's still called an easement, which is an argument that gives one pause to think about, as Judge Bryson has mentioned. But this language is unique. Well, Judge Newman, I would take issue with that. I don't find the language unique, and I would refer to our opening brief, particularly on pages 6 through 8, where we quote the relevant provisions of this. Repeatedly throughout this document, they define this as being for railroad purposes, and for the successor railroad, which in the Supreme Court's East Alabama decision has said a successor railroad is a successor railroad with the franchise. So that would not include New York City using this property for something having no relation whatsoever to the operation of a railroad. Why would they have written ten pages of single-space typewritten specification, all of which dealt very specifically and precisely with operating a railroad, if their intent was to say, well, let me use it for anything? It makes no sense to say that you can pull these three or four words out of the context and conclude the entire document, then somehow granted rights, that even as Judge Firestone said, no one contemplated at the time. And I see my time has expired, and I would reserve the balance for rebuttal. Yes, so let's hear from the other side, and we'll go for rebuttal. Okay, Ms. Meeker. Good morning. I am Emily Meeker, and with my colleague, Chris Tardif, I represent the United States. May it please the Court. We all agree that this case involves the interpretation of easement language under New York law. The Court of Federal Claims correctly concluded that this broad easement allows use for rail banking and interim trail use and is not limited only to rail. What's your answer to the position that, yes, we've got this broad statement, but we also have ten pages on specificity of railroad use? We do have that, Your Honor, but the language that we are looking at and are focused on is the language that talks about how the New York Central Railroad can use the easement area, and that's the granting language, and that's what the Court needs. Let's talk about the other language. And the other language talks about taxes, how the parties will divide the taxes, talks about certain other ways, how they'll build, how they'll be venting. There is certainly other language, but when we look to how the easement area should be used, this is clear and unambiguous language that it can be used for any such purposes that the railroad company, its successors, and assigns desire. Maybe it's just this language that just got tucked into one sentence. Well, Your Honor, I don't think that's right, and there are a couple of reasons to believe that. First, these are two highly sophisticated corporations. We have the New York Central Railroad and we have the New York Realty and Terminal Company. The Realty and Terminal Company was actually a division of the Central Railroad. These are sophisticated corporations. They certainly anticipated that this property would be used for railroad purposes. We see that in the language. But they also anticipated that the New York Central Railroad might want to use the language for other purposes, and we know that because it's also in the easement language. And what New York law says is that once the easement language is clear and unambiguous, the inquiry is finished. So you disagree with your opposing counsel on the question of whether New York law would require the language that's unambiguously clear that says you can use it for any purpose, that New York law would not enforce such an agreement? I disagree with my colleague, Mr. Hearn. I would urge the court to look to the Missionary Society case. We have. But that doesn't quite get you there, it seems to me. Well, in that case, the court— That was a related—arguably relates to related use, right? Well, in that case, the court looked at the language. Which it allowed for horses, vehicles, and all other lawful purposes. And what the court said is this is unusually broad, it's general in terms, and the only limitation on the use of this property is that it be used for lawful purposes. But they went on, if I recall the opinion, to say that it's really related to access. The water, I think, is a water-poorly drug of some such use, right? They did do that, Your Honor, assuming that it was only limited to a right-of-way. These uses would also be included. But I am not aware of any New York case that says, you know, this is too broad. And Mr. Hearn says that this is a fee, but it's not, in fact, a fee. It's an easement because the realty company reserves certain rights to itself. The rights being the right for indication of abandonment to have a reverter of the interest, I take it, and the rights against despoiling the property and so forth. They also reserve the right to build columns. They had the right to build above this easement area. This is a rectangular prism. And so they had the right to build columns above that didn't interfere with the uses of the easement holder. But they had that right. So they did reserve certain rights to themselves. And a fee, as the court is aware, the grantor gives all of his rights. Let me ask you a question that doesn't pertain to the precise issue we've been discussing, but it was in the record and I was just curious. The issue of the covenants not to sue was not decided by Judge Firestone and isn't an issue here. What happened to that issue? Because you would have thought that would have been a threshold issue, which if resolved against the appellant would be the end of the game. So, Your Honor, there were six. So I'm curious why you're on the merits instead of deciding that issue. There were six plaintiffs that did sign a covenant not to sue. That decision was issued by Judge Firestone. It was appealed and this court summarily affirmed. This particular appellant was not involved in that. And the reason it wasn't is that on the day the C-2 was issued, the appellant created a new corporation and transferred the property a couple months later to a new entity. And then New York got this new entity to sign the covenant not to sue. But the taking, alleged taking, occurs on the date of the C-2. So although the entity that was wholly owned by this other entity and by the same family signed a covenant not to sue, this particular entity did not. I'd like to turn back to the plain language. My colleague argues that for such other purposes should be interpreted as for such other railroad purposes, such that the granting clause would say for railroad purposes and for such other railroad purposes as the railroad company, its successors, and assigns desire. Of course, that reading would make the second clause completely redundant and would strip it of any meaning. Maybe they were just sloppy or hasty or what else could there be? Your Honor, I think the answer is they weren't sloppy. They weren't hasty. They carefully came to an agreement. They negotiated it. And they used this language that the grantee negotiated for this right and paid for it. And what the New York courts also say, which I think is not necessary here, but if the language is ambiguous or if it's not clear, New York courts construe easements most strongly against the grantor. And that's also in the Missionary Society case from the New York Court of Appeals. And in this case, that would require a broad reading of the easement, not narrow, as appellants suggest. We talked a little bit about the relationship between the parties. And I wanted to also talk about the East Alabama case that my colleague, Mr. Hearn, mentioned. That is a case where the Supreme Court was applying Alabama law. And Mr. Hearn has not cited a case where New York courts use Alabama law to interpret their decision or a New York court case that says anything similar. What New York courts do, as we know, is they look to the language of the easement. And if we turn to page 826 and 827 of this particular easement, it defines who the successors and assigns are. And it says, whenever the term railroad company shall be used herein, the same shall be construed to mean the railroad company, its successors and assigns, being the successor entitled to the railroad company, to the rights and easements herein granted to the railroad company and the respective land. So the successor and assigns are the entity that takes title to the land. This clause does not refer to the operation of a railroad or someone having a franchise. And again, it seems to help them. How confident are you that New York law would be clear and explicit and unambiguous in interpreting this property right? Very confident. I think the New York Court of Appeals addressed a case that's very similar in missionary society 85 years ago. And the other courts in New York, the appellate division, have applied that law to other cases. I don't think any of those cases, I have to say I haven't studied them carefully, had as explicit a grant as here. As broad a grant. That's true, except I guess the one exception might be the Phillips v. Jacobson case. And in that case, we don't know much about the grant except that the court said it was an easement and it wasn't limited by its terms for purposes. And the court cited the missionary society case for that it could be used for any purpose. So I believe that New York law is clear on this point. And I also think that the purposes were not as broadly unrelated as here. Your Honor, I mean, what my colleague says is that it wasn't contemplated. Well, we know what the parties contemplated. They contemplated that the railroad might want to use it for other purposes. That's the language. No New York case says that the parties have to sit down and sort of imagine every specific use. No, the parties can contract. They can say, you know, we don't know how this might be used. We don't know what's going to happen in the future. But we can contract around that unknown. And that's what they did here. The other part of this easement that I'd like to direct the court to is the habendum clause. Frequently in our cases we see, and Judge Newman, you mentioned before, that often in railroad cases they refer to railroad purposes. Frequently we see habendum clauses that state that the easement will terminate when the railroad purposes end. This one, which is on JA Joint Appendix 827, does not. It says, quote, to have and to hold the perpetual rights and easements herein granted by the realty company and the parcels of land above described and to the railroad company its successors and assigns forever. It does not limit this or say that the easement will end when it is no longer used for railroad purposes. And this differentiates this easement from other easements we see. I'd also like to quickly address the abandonment issue. Under New York law, to prove abandonment, appellant must show by clear and convincing evidence that there was an intention to abandon and some overt act or failure to act, which carries the implication that the owner neither claims nor retains any interest in the easement. Appellant does not meet that heavy burden here. Appellant's arguments regarding abandonment rely on their argument that easement was limited to railroad purposes. It was not. That's shown by the granting clause, which we've discussed, and the habendum clause, which is found on page 827, and we also discussed that as well. Moreover, the evidence in the record shows that the railroad has been actively involved with the High Line and has never acted in a way that suggested it neither claimed nor retained any interest in the easement. It contested the adverse abandonment proceeding and was actively involved regarding the negotiations in the High Line. In the late 1990s and early 2000s. So as the Court of Federal Claims found, these actions are of an entity that was actively claiming its property, not one that neither claimed nor retained any interest in the property. An appellant lacks evidence to show otherwise. Unless the court has any further questions, I will sit down. We ask that you affirm the decision of the trial court, and in the event that the court remands, we would ask that you remand so that the trial court can consider our alternative liability argument. Any more questions? Okay, good. Thank you. Thank you. Thank you, Your Honor, and Judge Bryson, you're absolutely correct when you say that missionary society doesn't get the government where it wants to go, doesn't support the CFC's conclusion in this case. Missionary society said an easement granted for vehicular use, for horses, for carriages, could also be used for pedestrians. You're exactly right to say, which is how the court analyzed missionary society, saying that's okay, you can also build a sidewalk for the pedestrians and lay a water pipe. That's a far cry from the situation we're confronted with here, which is a situation where unquestionably what even Judge Firestone found was what was intended to be an elevated railroad viaduct easement somehow now is used by a non-railroad for taco trucks, dancing, stargazing, public recreation. Things have nothing to do with the railroad. It is impossible to read that document, the 10-page typewritten document, and come away with the conclusion that these people intended to grant New York City, a non-railroad, the right to use that property in the manner it's now being used. That is the simple question of New York law. No case that we've ever found in New York has embraced a situation like this, granting such an interpretation of an easement to allow uses that were not contemplated by the parties. Again, I mentioned it earlier, the timeless first principle the New York Court of Appeals continues to use to guide its interpretation of easements is the party's intention. Now when we look at the language, as you noted, Judge Newman, and I quote the language right now, the operative language upon which Judge Firestone premised her conclusion were the words, for railroad purposes and for such other purposes as the railroad company, its successors and its signs may for time to time desire to make use. Other meaning other than railroad. I would say for such other purposes. The word such qualifies other purposes. It refers back to what appears before that. We cite Justice Roberts' decision in King v. Burwell where he noted the word such is not any. The word such is qualified by the preceding phrase. It depends on how the word such is used, though. If one says an expression such as I am going to invite my fellow judges and such other persons as I may choose to dinner, the such there does not mean, and they have to be among my fellow judges. It means exactly the opposite. It means such other different purposes, and that's parallel to this language, it seems to me. I find your such argument doesn't have much traction. Well, and I would say that when you look at that, and here's maybe I can add some traction to the argument. Because what I'm looking at is within that whole paragraph and particularly within the whole document, you find, again, painstaking discussion of the specifics of the railroad's uses. So you find reference to cables, to tracks, to there's other railroad purposes that are necessary to the operation of a railroad. That's clearly what I believe they had contemplated when they said such other purposes. So, for example, employee lockers or hand cars or some signals or electric signals or telegraph lines that are related to the operation of the railroad. Those would be other railroad purposes. And when you see this document, it's impossible, I think, to conclude that when they wrote that, that they contemplated and even Judge Firestone didn't find, oh, we can mean a non-railroad using it for public recreation. Well, you keep saying that Judge Firestone so found this. I assume you're referring to the statement where she says that it doesn't matter that they didn't specifically contemplate the use for a trail or a park as long as the language is clear enough that it's clear that they contemplated that there could be any other purposes, is basically what you're saying. I don't see that that's terribly helpful. Well, the statement I was actually referring to is at Joint Appendix 12, and I'll quote, at the time the easement was, this is Judge Firestone speaking, at the time the easement was granted, Realty Company and New York Central Railroad could not foresee use of the corridor for a public trail or park, meaning that it was not within their contemplation at the time that this document, this easement was established. Not for those kinds of specific purposes, but that's quite different from saying they couldn't contemplate that it could possibly be used for any other non-railroad purpose, right? And I think, Judge Bryson, that's where it blends into this concept of the distinction between an easement and a fee estate. If you say the parties signed a document called an easement, which everybody admits it is, but that they contemplated this easement granting the right to do anything they wanted with the property, you've suddenly transmogrified an easement into a fee estate, because what would be the limits to this? The only limit that Judge Firestone suggested was the physical dimensions of the property. Well, that's not really a limit on a use. An easement is a specific, by definition, a specific use of the property for a specific purpose, and it can't encompass all purposes. Thank you. Okay, thank you. Thank you both. The case is taken under submission.